IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



| | |
|---|---|
| MARC STOUT, <br> JACQUELINE STOUT, <br><br> Plaintiffs, <br><br> v. <br><br> TIMOTHY BAROODY, et. al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No.: 3:21-cv-476 <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' RESPONSE TO DEFENDANT RIDENOUR'S MOTION TO DISMISS**

### I. STANDARD OF REVIEW

"In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *See, e.g., De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir.1991)." *Mylan Laboratories, Inc. v. Matkari*, 7 F. 3d 1130 (4th Cir. 1993). The court must "draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999)." *Nemet Chevrolet, Ltd. v. Consumeraffairs. com, Inc.*, 591 F. 3d 250 (4th Cir. 2009).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id*. Furthermore, when as

here, a Rule 12(b)(6)motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.' *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) (internal quotation marks omitted) (emphasis added). We do note, however, that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083,1085 (4th Cir.1979)." *Edwards v. City of Goldsboro*, 178 F. 3d 231 (4th Cir. 1999).

## II. FAILURE TO STATE PLAUSIBLE FIRST AMENDMENT RETALIATION CLAIM

Defendant Ridenour asserts that "Plaintiffs have failed to allege any facts to support a finding that the unlawful assembly declaration was inappropriate." Defendant Ridenour, himself, in his motion to dismiss, conceded that the Plaintiffs alleged that the circumstances were that the protesters were walking in the street, kneeling in the street, remaining in the street, and lying in the street, and that, *then*, the unlawful assembly declaration was declared. Walking, kneeling, remaining, or lying in the street is not probable cause of an unlawful assembly.

Plaintiffs alleged that "PERF determined that, 'while tensions were high, PERF's review of officers' body-worn camera footage did not show members of the crowd actively engaged in acts of destruction or other types of violence.'" Second Amended Complaint ¶ 138.

Plaintiffs alleged that "PERF determined that Fredericksburg's protests were 'brief and relatively peaceful compared to those of many other cities. In some locations, protests continued for months, and many cities faced rioting and significant violence.'" Id., at ¶ 133.

Plaintiffs alleged that "Timothy Baroody and the Chief of Police declared the protest out front of the courthouse an unlawful assembly because protestors were expressing criticisms about the police." Id., at ¶ 153.

Plaintiffs alleged that "the police declared the protest an unlawful assembly because the message of the protestors was sharply critical of the police and overwhelmed the police." Id., at ¶ 57.

"The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct. And such a prohibition, in addition, contains an obvious invitation to discriminatory enforcement against those whose association together is 'annoying' because their ideas, their lifestyle, or their physical appearance is resented by the majority of their fellow citizens." *Coates v. Cincinnati*, 402 US 611 - Supreme Court 1971.

"The Fourteenth Amendment does not permit a State to make criminal the peaceful expression of unpopular views. '[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech . . . is . . . protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or

3

unrest. . . . There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups.' *Terminiello v. Chicago*, 337 U. S. 1, 4-5. As in the *Terminiello* case, the courts of South Carolina have defined a criminal offense so as to permit conviction of the petitioners if their speech "stirred people to anger, invited public dispute, or brought about a condition of unrest. A conviction resting on any of those grounds may not stand." *Id.*, at 5. *Edwards v. South Carolina*, 372 US 229 - Supreme Court 1963.

"The constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation." *Brandenburg v. Ohio*, 395 US 444 - Supreme Court 1969.

Plaintiffs' "march, if peaceful and orderly, falls well within the sphere of conduct protected by the First Amendment. See *Shuttlesworth v. City of Birmingham*, post, p. 147; *Brown v. Louisiana*, 383 U. S. 131, 141-142 (1966) (prevailing opinion of MR. JUSTICE FORTAS); *Henry v. City of Rock Hill*, 376 U. S. 776 (1964); *Fields v. South Carolina*, 375 U. S. 44 (1963), reversing 240 S. C. 366, 126 S. E. 2d 6 (1962)." *Gregory v. Chicago*, 394 US 111 - Supreme Court 1969.

Defendant Ridenour, or any other officer, did not possess probable cause that the protesters were in the "commission of an act or acts of unlawful force or violence likely to jeopardize seriously public safety, peace or order." Virginia Code §18.2-406. Therefore, Defendant Ridenour, or any other officer, did not possess probable cause to declare the protest an unlawful assembly, or to enforce the unlawful assembly declaration with pepper-spray.

"However reasonable the police request may have been and however laudable the police motives," Plaintiffs were punished "for holding a demonstration." *Gregory v. Chicago*, 394 US 111 - Supreme Court 1969.

### III. FAILURE TO STATE PLAUSIBLE FOURTEENTH AMENDMENT/ EXCESSIVE FORCE, DENIAL OF LIBERTY CLAIMS

"An analysis of excessive force, 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' *Graham v. Connor*, 490 U.S. 386, 398, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). It is difficult to imagine the unarmed. . .as a threat to. . .officers or the public." *Park v. Shiflett*, 250 F. 3d 843 - Court of Appeals, 4th Circuit 2001.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. See *id.*, at 140 ('The first inquiry in any § 1983 suit' is 'to isolate the precise constitutional violation with which [the defendant] is charged'). In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard. See *Tennessee v. Garner, supra*, at 7-22 (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers*, 475 U. S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard)." *Graham v. Connor*, 490 US 386 - Supreme Court 1989.

5

Assuming, *arguendo*, that Defendant Ridenour had probable cause to enforce the unlawful assembly declaration, Defendant Ridenour's deployment of pepper-spray to Marc Stout's face was still unreasonable, and was excessive force. *Park v. Shiflett*, 250 F. 3d 843 - Court of Appeals, 4th Circuit 2001 (excessive force where officers pepper-sprayed woman who charged towards officers who were arresting the woman's husband).

Defendant Ridenour, or any other officer, did not possess probable cause that the protesters were in the "commission of an act or acts of unlawful force or violence likely to jeopardize seriously public safety, peace or order." Virginia Code §18.2-406. Therefore, Defendant Ridenour, or any other officer, did not possess probable cause to declare the protest an unlawful assembly, or to enforce the unlawful assembly declaration with pepper-spray.

"However reasonable the police request may have been and however laudable the police motives," Plaintiffs were punished "for holding a demonstration." *Gregory v. Chicago*, 394 US 111 - Supreme Court 1969.

## IV. QUALIFIED IMMUNITY

"The fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes. See *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. 'Clearly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992).

"Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the

6

action, *Harlow*, 457 U. S., at 819, assessed in light of the legal rules that were 'clearly established' at the time it was taken, id., at 818." *Anderson v. Creighton*, 483 U.S. 635 (1987).

"Our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell*, *supra*, at 535, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *See*, e. g., *Malley*, *supra*, at 344-345; *Mitchell*, *supra*, at 528; *Davis*, *supra*, at 191, 195." *Id.*

"We reiterated in *Owens v. Lott* that 'the qualified immunity determination "is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances."' 372 F.3d 267, 279 (4th Cir.2004) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 402 (4th Cir.2003))." *Henry v. Purnell*, 652 F.3d 524 (4th Cir. 2011).

"A constitutional right is clearly established when 'its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' *Hope*, 536 U.S. at 739, 122 S.Ct. 2508 (internal quotation marks omitted). That is, "'in the light of pre-existing law the unlawfulness must be apparent,'" id. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)), but 'the very action in question [need not have] previously been held unlawful,' *id.* (internal quotation marks omitted), because "'general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity

7

to the specific conduct in question,'" *id.* at 741, 122 S.Ct. 2508 (quoting *United States v. Lanier*, 520 U.S. 259, 270-71, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). Thus, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.' *Id*. The 'salient question' is whether the state of the law at the time of the events in question gave the officials 'fair warning' that their conduct was unconstitutional. *Id*." *Ridpath v. Board of Governors Marshall University*, 447 F.3d 292 (4th Cir. 2006).

"In the absence of controlling authority that specifically adjudicates the right in question, a right may still be clearly established in one of two ways. A right may be clearly established if 'a general constitutional rule already identified in the decisional law [] appl[ies] with obvious clarity to the specific conduct in question.' *Hope*, 536 U.S. at 741, 122 S.Ct. 2508 (quoting *United States v. Lanier*, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)); *see also Owens*, 372 F.3d at 279 (stating that a right may be clearly established if it is 'manifestly apparent from broader applications of the constitutional premise in question'). A right may also be clearly established based on a '"consensus of cases of persuasive authority"' from other jurisdictions.' *Owens*, 372 F.3d at 280 (quoting *Wilson*, 526 U.S. at 617, 119 S.Ct. 1692)." *Booker v. South Carolina Dept. of Corrections*.

"To determine whether the individual defendants here are entitled to qualified immunity, we must make a two-step inquiry 'in proper sequence.' *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As a threshold matter, we must determine whether, '[t]taken in the light most favorable to the party asserting the injury, ... the facts allegedly show [that] the officer's conduct violated a constitutional right.' *Id*. at 201, 121 S.Ct. 2151. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id*. If the facts do establish such a violation, the next step is to determine whether

the right violated was 'clearly established' at the time of the alleged offense." *Parrish ex rel Lee v. Cleveland*, 372 F.3d 294 (4th Cir. 2004).

"Before we apply these rules to the instant case, we must first define the right at the 'appropriate level of specificity.'" *Wilson*, 526 U.S. at 615, 119 S.Ct. 1692. *Booker v. South Carolina Dept. of Corrections*, 855 F.3d 533 (4th Cir. 2017).

It was clearly established, at all times material, that Defendant Ridenour did not possess probable cause to declare, or to enforce the declaration of, an unlawful assembly. It was clearly established, at all times material, that deploying pepper-spray on Marc Stout, under the circumstances of the facts of this case, was excessive force.

SUBMITTED,

_Jacqueline Stout_  
MARC STOUT, *Pro Se*  
Plaintiff  
30 WILLOW BRANCH PLACE  
FREDERICKSBURG, VA 22405  
(540) 370-6980  
FORMULAFOCUSED@GMAIL.COM

10/9/2021  
DATE

## CERTIFICATE OF SERVICE

Plaintiffs hereby certify that a copy of this document was emailed on October 9, 2021, to counsel for defendant Ridenour, John D. McGavin, at jmcgavin@bmhjlaw.com.

SUBMITTED,

*[signatures: Marc Stout and Jacqueline Stout]*          10/9/2021
MARC STOUT, *Pro Se*                                      DATE
Plaintiff
30 WILLOW BRANCH PLACE
FREDERICKSBURG, VA 22405
(540) 370-6980
FORMULAFOCUSED@GMAIL.COM

## GHOSTWRITING CERTIFICATE

Plaintiffs hereby certify that they did not receive help from an attorney in the preparation of this document.

SUBMITTED,

*[signatures: Marc Stout and Jacqueline Stout]*          10/9/2021
MARC STOUT, *Pro Se*                                      DATE
Plaintiff
30 WILLOW BRANCH PLACE
FREDERICKSBURG, VA 22405
(540) 370-6980
FORMULAFOCUSED@GMAIL.COM

Marc Stout, *Pro Se*
Jacqueline Stout, *Pro Se*
30 Willow Branch Place
Fredericksburg, VA 22405
(540) 370-6980
formulafocused@gmail.com

October 9, 2021

Clerk
U.S. District Court
701 East Broad Street
Richmond, VA 23219

RE: *Stout, et. al. v. Baroody, et. al,* 3:21-cv-476

Dear Clerk,

Please find enclosed "Plaintiffs' Response to Defendant Ridenour's Motion to Dismiss." Please file with the court.

Respectfully and gratefully,

*Jacqueline Stout*

Marc Stout
Jacqueline Stout